# Holly *v.* Bass' Adm'r.

*Bill in Equity to Enforce Vendor's Lien on Land.*

1. *Decree against non-resident, on publication.*—Under the statute which was of force prior to the adoption of the Code (Clay's Digest, 353, § 45), the complainant in a chancery cause was required, before obtaining a decree against a non-resident defendant who was brought in by publication only, to give bond conditioned for the restitution of the property to abide the order of the court; and the failure to require such bond was an error, for which the decree would be reversed.

2. *Same.*—Under the present statute (Code, §§ 3830-35), although it is provided that a decree against a non-resident defendant, who has not appeared, "is not absolute for eighteen months from the rendition thereof," unless that period is shortened by personal service of a copy of the decree, and that the plaintiff must give a restitution bond "before the execution of such decree," and that the court must direct a copy of the decree to be sent to such defendant; and although the court, in entering the decree, should require these things to be done, and the failure to comply with them would be good cause for refusing to confirm a sale under the decree, or for setting it aside; yet the decree is not reversible on error for want of any or all of them.

3. *Publication against non-resident.*—A recital in a decree *pro confesso,* against a non-resident defendant, that a copy of the order of publication "has been sent *to the post-office* of said defendant," does not show a compliance with the rule of practice (No. 25), which requires that a copy shall be "sent *to the defendant,*" at his post-office when known.

4. *Appearance; when not shown by recitals.*—When a decree *pro confesso* has been entered against two defendants, on personal service as to one, and on publication against the other as a non-resident, and is afterwards set aside "parties consenting," this is not sufficient to show an appearance by the non-resident defendant, and thus cure the defects in the decree *pro confesso* against him.

5. *Notice of amendment of bill.*—When a decree *pro confesso* has been regularly entered against a non-resident defendant on publication, this does not dispense with the necessity of giving him notice of an amendment of the bill, as required by the rule of practice (No. 47); that is, by entering notice of the amendment on the order-book.

[*Holly* v. *Bass' Adm'r.*]

APPEAL from the Chancery Court of Crenshaw.

Heard before the Hon. H. AUSTILL.

The bill in this case was filed on the 16th March, 1877, by James Tell, as the administrator of the estate of Bennett B. Bass, deceased, against John Ramer and Alfred Holly; and sought to subject a certain tract of land, in the possession of said Holly, to the payment of the purchase-money due to the estate of Bass. According to the allegations of the original bill, Bass sold and conveyed the land to Ramer in January, 1860, and placed him in possession, but received no part of the agreed price ($900), and took no notes for the purchase-money; and in September afterwards, the purchase-money being still unpaid, he sold the land, for the same price, to said Holly, to whom Ramer then executed a conveyance, and delivered the possession; but Holly paid no part of the money, and did not give his notes for it. An amended bill was afterwards filed, which alleged that, at the time the contract was made between Bass and Holly, the contract between Ramer and Bass was rescinded, and Ramer conveyed to Holly at the request of Bass. A decree *pro confesso* was taken against each of the defendants; against Ramer, on personal service; and against Holly, on publication against him as a non-resident. On final hearing, on pleadings and proof, the chancellor rendered a decree for the complainant, and ordered a sale of the land. From this decree Holly only appeals, and here assigns it as error, with numerous irregularities in the proceedings, which will be understood from the opinion of the court.

J. M. WHITEHEAD, and J. D. GARDNER, for appellant.

W. D. ROBERTS, *contra*.

STONE, J.—The decree in this cause was rendered without personal service on Alfred Holly, the only defendant whose property rights are affected by it. Publication was made as to him, and a decree *pro confesso* rendered thereon.

The decree orders the sale of lands, as the property of Alfred Holly, and under it certain lands have been sold. The chancellor, in rendering his decree, did not require of complainant, the party interested, a bond conditioned " to account for the value, rents and profits of any real estate transferred by the operation of such decree; " and we are not informed such bond was given.—Code of 1876, § 3834. This is assigned as error.

Under the " act empowering courts of equity to proceed against absent defendants," approved February 1st, 1805

(Clay's Dig. 353, § 45), the complainant was required, before obtaining a decree against any defendant who was notified by publication, and who did not personally appear, to "give good and sufficient security, in such sum as the court may direct, to abide such order touching the restitution of the estate or effects to be affected by such decree, as the court may make concerning the same," &c. It was uniformly held, that a decree rendered against a non-resident, notified only by publication, would be reversed in this court, if it failed to require such bond.—1 Brick. Dig. 730, § 1318.

The statute which governs this case reads as follows : "It is no objection to the execution of a decree rendered against a defendant, that it was founded a bill taken *pro confesso* without personal service ; but, before the execution of such decree, the plaintiff, or party interested, must give bond with two sureties, payable to and approved by the register, in a penalty to be prescribed by the chancellor or such register, conditioned," &c.—Code of 1876, § 3834.

Section 3835 of the Code declares, that "Where personal service of a decree rendered under the provisions of this chapter is made by serving the defendant with a copy of such decree, the same is conclusive and binding on him, if the petition to set aside such decree is not made within six months from such service."

Section 3830 of the Code contains this provision : "A decree made against a defendant, without personal service, who does not appear, is not absolute for eighteen months from the rendition thereof ; and in such case, the court must direct a copy of the decree to be sent to such defendant," &c.

Section 3831 provides, that "such defendants may file a petition to set aside such decree, and to defend the suit on the merits, at any time within eighteen months ; and upon sufficient cause shown, the chancellor has full power to open the decree, and to hear the cause, as if no decree had been rendered."

We think all these provisions must be construed in *pari materia,* as constituting one system. Section 3830 declares, that "a decree made against a defendant, without personal service, who does not appear, is not absolute for eighteen months from the rendition thereof ;" and this section provides that, "in such case, the court must direct a copy of the decree to be sent to such defendant." What is meant by the words " not absolute," is shown in the next section, 3831. For the term of eighteen months, the chancellor, on petition filed, " has full power to open the decree, and to hear the cause, as if no decree had been rendered." Section 3835 provides, that this period of eighteen months may be

shortened, by having personal service of the decree made on the defendant affected by it; in which event, "the same is conclusive and binding on him, if the petition to set aside such decree is not made within six months after such service." These clauses are plain and unambiguous. Section 3834 of the Code relates to all decrees rendered without personal service, and requires bond to be given by the complainant, or party interested, if he wish to have execution of his decree before it becomes absolute under sections 3830, 3831, 3835 of the Code. After the decree becomes absolute, no such bond is necessary.

The record in the present case fails to show that the court directed a copy of the decree to be sent to the defendant Holly, and, as we have shown, it fails to show the court required complainant to give bond, before he had execution of his decree. Evidently, it was the duty of the Chancery Court to require both these things to be done. What is the effect of the silence of the record upon these questions?

The act of 1805, and section 3834 of the Code of 1876, are different in phraseology. The former declared that, before, obtaining a decree against a party who was notified by publication, and who did not appear, the complainant should give bond. This must precede the decree itself. The Code, section 3834, contains no such inhibitory clause, but provides that, before the execution of such decree, such bond shall be given. This is not a prohibition against making the decree, as the former statute was, but only forbids its execution, until restitution bond is executed. The court, in rendering such decree, should make an order that the decree shall not be executed, until the complainant, or party interested, execute the bond the statute requires. But, inasmuch as this is not made a condition precedent to the rendering of the decree, it is no ground for its reversal. It would furnish good ground for refusing to confirm the sale, or for setting it aside, if moved for within a reasonable time.—*McCullum v. Hubbert*, 13 Ala. 289; *Daniel v. Modawell*, 22 Ala. 365; *McCaskell v. Lee*, 39 Ala. 131; *Mobile Cotton Press Co. v. Moore & Magee*, 9 Por. 679; *Lankford v. Jackson*, 21 Ala. 626.

Section 3830 of the Code directs that, when a decree is rendered without personal service, the party not appearing, "the court must direct a copy of the decree to be sent to such defendant." This should always be complied with; and if neglected, we will not say the decree would become absolute at the end of eighteen months. This duty, like the one last above considered, is subsequent to the rendering of the decree, and its omission furnishes no ground of reversal.

· Section 3823 of the Code authorizes a decree *pro confesso*

to be taken, "on the failure of the defendant to answer or plead to the bill, within thirty days . . after the period specified in the order of publication to answer, if the publication required by the order has been perfected." In the decree *pro confesso* rendered against Holly in this case, the recital is "that notice of the same [the publication] has been posted at the court-house door where said Chancery Court is held, and a copy of said notice has been sent to the post-office of said defendant." The rule of practice (No. 25) requires the register to send a copy of the publication "by mail, to the defendant, when his residence is shown by the bill or affidavit." The post-office of the defendant, Holly, was shown by the affidavit of complainant's solicitor, and the copy should have been sent to him. Sending it to the "post-office" of the defendant, is not necessarily sending it *to the defendant* at his post-office. Notice by publication is, at most, constructive notice; and, to be valid, every substantial requirement of the statute and the rule must be complied with.—1 Brick. Dig. 728, §§ 1300, 1301, 1302 ; *Curry v. Falkner*, 51 Ala. 564.

This decree *pro confesso* was afterwards set aside—the entry reciting, "parties consenting;" an amendment to the bill allowed, and defendants allowed thirty days within which to answer. There is no attempt, in the record, to show that notice of this amendment was served, or that notice was spread on the order-book. After the thirty days expired, the register entered another decree *pro confesso* against Holly, in the following terms : "It appearing to the register that an order of court was made on the 22d day of October, 1877, requiring the defendant Alfred Holly to appear, answer, demur to, or otherwise defend against the bill of complaint as amended in the above stated cause, within thirty days after passing said order, and the said defendant Alfred Holly has failed to appear within said time to answer, demur to, or otherwise defend against said bill of complaint as amended, for more than thirty days; on motion, it is ordered, that said bill of complaint as amended be taken as confessed against said defendant." It is contended for appellee, that the words, "parties consenting," bring the said Alfred Holly into court, and heal all imperfections in the original decree *pro confesso*. We think this would be according too much influence to the words, *parties consenting*. True, the word parties is plural, and denotes more than one. How many does it denote? The present suit has three parties—one complainant, and two defendants. One defendant, Ramer, was personally served, and was thereby brought actually into court. The other, Holly, was not served personally

[Campbell v. Crawford.]

with process. Neither answered. If the complainant and any one of the defendants was present, and consented, this meets all the requirements of the words 'parties consenting.' We do not think this recital brought Mr. Holly before the court, or healed the irregular decree *pro confesso.* Not being before the court, the second decree *pro confesso* does not recite enough to conclude a non-resident defendant, as to whom only publication was made.—See *Williams v. Lewis,* 2 Stew. 41; *Lucy v. Beck,* 5 Por. 166; *Catlin v. Gilders,* 3 Ala. 536; *Puckett v. Pope, Ib.* 552; *Savage v. Walshe,* 26 Ala. 619; *Ex parte Lyon,* 60 Ala. 650; authorities collected in *Hunt v. Ellison,* 32 Ala. 185.

If the decree *pro confesso* against Holly had been regularly taken, he would then have been in default. This, however, would not have dispensed with the notice the rule requires.—Rule of Chancery Practice No. 47, subd. 3. Notice of some of the amendments was not given according to this rule, or in any other manner, so far as the record discloses. There was no necessity to give notice of the first amendment allowed by the register. That amendment was allowed under section 3788 of the Code of 1876.

Reversed and remanded.